# CHARLESTON.

PITTSBURG & WEST VIRGINIA GAS COMPANY V. CUTRIGHT *et al.*

Submitted October 9, 1918.   Decided October 29, 1918.

1. EMINENT DOMAIN—*Natural Gas Pipe Lines—Public Use.*

   A company organized to transport and serve the public with natural gas may take by condemnation for its pipe lines land necessary for the proper and efficient conduct of its business as a public carrier, and land taken or proposed to be taken for such use is none the less a public use because the pipe lines therefor are carried by a gasoline plant for the purpose of extracting and preserving the gasoline and for extracting water and other liquid substances to purify the gas, and to facilitate the transportation thereof through the pipe lines to consumers.   (p. 43).

2. SAME.

   Nor will the fact that such gas company will indirectly reap a greater income and add to its profits from the gasoline so taken from the gas render the use of the land so taken any the less a public use.   (p. 43).

Error to Circuit Court, Doddridge County.

Condemnation proceeding by the Pittsburgh & West Virginia Gas Company against M. R. Cutright and others. Judgment for defendants, and plaintiff brings error.

*Reversed and remanded.*

*A. F. McCue* and *M. H. Willis,* for plaintiff in error.
*Homer Strosnider,* for defendants in error.

MILLER, JUDGE:

The judgment below denied plaintiff the right to take by condemnation as proposed for an easement or right of way for its pipe lines a strip of land ten feet wide and 570 feet long through the defendants' land. This strip extends from a point near the location of one of plaintiff's compressor plants along its main pipe line to a gasoline plant being erected for it at the village of Sedalia, in Doddridge county. The right was denied because in the judgment of the circuit court the right of way desired was for a private, not a public use.

It is not questioned that plaintiff is a public service corporation organized under the laws of this state for the purpose of transporting and serving the public with natural gas. Section 2 of chapter 42 of the Code authorizes the creation of corporations for that purpose, and section 20 of the same chapter authorizes the condemnation proceedings employed in this case, to acquire easements or rights of way for pipe lines necessary and convenient for such purposes. The sole and only question here presented is whether the particular strip of land sought to be taken is for a public use or only for the private use of petitioner. It is admitted that one of its objects and purposes is that the gas which is gathered at its compressor station from many sources and with which the public is afterward served, may by means of the pipe lines to be laid on the land proposed to be taken be first passed through the condensing or gasoline plant and the gasoline, water and other liquid substances extracted before admitting it into and through its discharge or service pipes and by the compressor driven on to the market. To do this it is necessary to lay down two lines of pipe, one to carry the gas in its natural state into the gasoline or condensing station, and the other to pass it out to and on through the main discharge line as indicated.

It is clearly shown that the main business of the plaintiff is not the production of gasoline, and we think its right to erect somewhere along its line compressors and also gasoline plants or stations for extracting the gasoline and otherwise purifying the gas and facilitating its transportation and to take land for that purpose can hardly be denied. But the criticism is that incidentally the plaintiff will reap a profit from the gasoline so extracted, and that it can not by the power of eminent domain take land for such purposes. The record shows however that conservation of gasoline, which is very desirable, if not almost imperative, is not the only purpose of extracting it and other liquid substances from the gas. Other objects are to be subserved thereby; one of these is to serve the public with a purer quality of gas without material detriment to its heat properties; another is to avoid waste of the gas in great quantities by the neces-

sity of maintaining at low places all along the line drips for draining and blowing out the gasoline and water which accumulate in the pipes, clogging and sometimes stopping the flow of the gas and cutting off the supply where served to the public; still another object is to prevent the gas so accumulated in the pipe lines from destroying the rubber rings used in connecting the joints of pipe and causing blow-outs, increasing the expense in maintaining the pipe lines and resulting often in the interruption of the business and supply of gas to consumers. That this plan for conserving the product and facilitating its transportation is according to the best and most scientific methods, is clearly shown by expert witnesses examined at the trial. All or substantially all large companies now employ this method of operation and transporting the gas to market.

We need not here repeat what has been said in previous decisions regarding the rights and powers of gas companies under our laws to take and appropriate land for public uses. Many of the questions raised and argued here were therein presented and decided adversely to the contention of defendants in this case. *Natural Gas Co.* v. *Lowe,* 52 W. Va. 662; *Carnegie Nat. Gas. Co.* v. *Swiger,* 72 W. Va. 557. But the claim on behalf of the defendants is that the real purpose of the petitioner in taking the defendants' land is to get the gas to their gasoline plant to extract the gasoline and reap a profit thereon, and that the other purposes named are mere pretenses to cover the main object, the extraction of the gasoline and adding to the profits of the business. We do not think this is a fair conclusion from the evidence. Counsel contend that the principles of *Varner* v. *Martin,* 21 W. Va. 534; *Railroad Co.* v. *Iron Works,* 31 W. Va. 710; and *Hench* v. *Pritt,* 62 W. Va. 270, control this case. The first case involved the right to condemn for a private road; the second a private siding for an iron mill; the third the validity of a statute authorizing it, and the right of a lumber company to take the land of another for a timber road of which the public would have had no use. Should cases like these control the decision of this case? We think not; they have no substantial application. In the case here presented it is true

the public will derive no direct benefits from the gasoline, but if the quality of the gas served is better and the method and means of transportation thereby made more secure and constant, the public will get that use from the pipe lines proposed to be built over defendants' land. But this is not the main advantage; the public will actually be served with the gas transported through these pipe lines, and those lines will be thereby devoted mainly to public use. Indeed these pipe lines when built through defendants' land by way of the gasoline plant, will constitute a part or section of the plaintiff's main line of pipe through which they propose to serve the public and which will be subject to control by the public authorities. If the proposed way to the gasoline plant had been a more gradual one, would any one doubt the right of the plaintiff in the premises? The fact that it leads off at right angles, or practically so, to the general course of the main line, can make no practical difference or characterize the use as a private rather than a public use.

Such being the character of the use to which it is proposed to subject the land of defendants, we think it is a public use and that the plaintiff has the right to take it for that purpose. The mere fact that some profit may be incidentally derived by plaintiff from the extraction and marketing of the gasoline does not change the character of the use. This proposition is settled by many judicial decisions and text writers cited and relied on by counsel, which need not be here analyzed. They may be cited however as illustrations of the application of the principle and its relevancy to the case at bar. *McMillan* v. *Noyes,* 75 N. H. 258, holding that the fact that the corporation may employ some of its powers for private gain does not show that its use for general lighting purposes is not public in its nature; *Ryan* v. *Louisville & Nashville Terminal Company,* (Tenn.), 45 L. R. A. 303, holding that the fact that the corporation was authorized to maintain at its passenger station on the land taken a hotel, restaurant and news stand did not constitute the taking of property for private purposes; *St. Louis Iron Mt. R. R. Co.* v. *Petty,* (Ark.), 20 L. R. A. 434, holding that if side tracks are necessary to facilitate and hasten the business

offered to a certain railroad at a certain point, the fact that they will constitute an especial advantage to a particular shipper will not defeat the right by eminent domain to procure the right of way; *The Florida Central and Peninsula Railroad Co.,* 97 Fla. 107, holding that the power conferred by the statute on a railroad company to take land outside of its right of way for obtaining gravel and other material as may be necessary to the proper construction, operation and security of its road was not in conflict with the constitution of that state; *Chicago, Burlington & Quincy Railroad Co.* v. *Isaac G. Wilson,* 17 Ill. 123, holding that the power granted to a railroad company to construct a road, with such appendages as may be deemed necessary for the convenient use of the same, will authorize it to acquire land by condemnation for work shops, etc. And following the rule of this case it was held in *Low* v. *Galena & Chicago Union Railroad Co.,* 18 Ill. 324, that such power included the power to condemn ground for a depot. See also 10 R. C. L. §39 et seq., p. 44. Many other illustrative cases may be found cited and annotated in note to *City of Grafton* v. *St. Paul, Minneapolis and Manitoba Railway Co. et al.* (N. D.), 22 L. R. A. (N. S.) 1, 80, 81.

Moreover it is settled law that where a corporation authorized to do so assumes the burden of a public service, the methods and manner of discharging its duties is largely left to the discretion of its board of directors, and this includes the right to determine the route and quantity of land necessary to be taken for the public use, subject of course to the control of the courts on the question of the public use, and generally the burden is on the land owner to show that the land is to be devoted not to a public but a private use. *Caretta Railway Co.* v. *Coal Co.,* 62 W. Va. 185, 190; *Carnegie Nat. Gas Co.* v. *Swiger, supra,* 572. We think defendants have failed to bear this burden, and that the judgment below should be reversed and the case remanded for further proceedings, and we will so order.

*Reversed and remanded.*