509 S.E.2d 569

**CHARLESTON URBAN RENEWAL AUTHORITY, a public body corporate and politic, Petitioner Below, Appellee,**

v.

**The COURTLAND COMPANY, a West Virginia corporation, Defendant Below, Appellant.**

No. 25015.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 16, 1998.

Decided Oct. 30, 1998.

Joyce F. Ofsa, Esq., Trina L. Leone, Esq., Spilman Thomas & Battle, PLLC, Charleston, West Virginia, Attorneys for Appellee.

Charles B. Dollison, Esq., Kenneth E. Webb, Jr., Esq., John Teare, Esq., Geoffry A. Haddad, Esq., Bowles Rice McDavid Graff & Love, PLLC, Charleston, West Virginia, Attorneys for Appellant.

STARCHER, Justice:

In the instant case, the Courtland Company ("Courtland") challenges the authority of the Charleston Urban Redevelopment Authority ("CURA") to exercise the power of eminent domain to acquire land ("the Courtland Property") that is owned by Courtland and is located in downtown Charleston.

CURA wants to acquire and develop the Courtland Property as part of a unified business district, pursuant to the provisions of CURA's redevelopment plan for the downtown Charleston area. The Courtland Property is presently being used as a privately owned commercial parking lot and is wholly located within an area that was designated as a slum or blighted area by the Charleston City Council in 1984.

CURA and Courtland have been unable to agree on a purchase price for the Courtland Property. On March 30, 1997, CURA instituted eminent domain proceedings by filing a condemnation petition in the Circuit Court of Kanawha County. Courtland opposed the petition on a variety of grounds.

The circuit court concluded that the Authority was acting within its legitimate power. We affirm the ruling of the circuit court.

### I.

### *Facts and Background*

The Courtland Property consists of four contiguous parcels of land that are all located on one city block in the downtown Charleston area. Courtland acquired three of the parcels in 1980 and acquired the fourth parcel in 1990.

CURA is a public body and exists and acts under the authority of *W.Va.Code*, 16–18–1 to –29, the "Urban Renewal Authority Law." The overall purpose of urban renewal authorities like CURA is set forth in *W.Va.Code*, 16–18–2 [1951], that states:

It is hereby found and declared that there exist in localities throughout the State, slum and blighted areas (as herein defined) which constitute a serious and growing menace, injurious and inimical to the public health, safety, morals and welfare of the residents of the State; that the existence of such areas contributes substantially and increasingly to the spread of disease and crime, necessitating excessive and disproportionate expenditures of public funds for the preservation of the public health and safety, for crime prevention, correction, prosecution, punishment and the treatment of juvenile delinquency and for the maintenance of adequate police, fire and accident protection and other public services and facilities, constitutes an economic and social liability, substantially impairs or arrests the sound growth of communities and retards the provision of housing accommodations; that this menace is beyond remedy and control solely by regulatory process in the exercise of the police power and cannot be dealt with effectively by the ordinary operations of private enterprise without the aids herein provided; that the elimination of slum conditions or conditions of blight, the acquisition and preparation of land in or necessary to the development of slum or blighted areas and its sale or lease for development or redevelopment in accordance with general plans and redevelopment plans of communities and any assistance which may be given by any State public body in connection therewith, are public uses and purposes for which public money may be expended and private property acquired; and that the necessity in the public interest for the provisions hereinafter enacted is hereby declared as a matter of legislative determination.

Urban renewal authorities such as CURA have the power of eminent domain pursuant to *W.Va.Code*, 16–18–8 [1951]:

An authority shall have the right to acquire by the exercise of the power of eminent domain any real property which it may deem necessary for a redevelopment project or for its purposes under this article after the adoption by it of a resolution declaring that the acquisition of the real property described therein is necessary for such purposes. An authority may exercise the power of eminent domain in the manner provided for condemnation proceedings, in chapter fifty-four of the Code of West Virginia, one thousand nine hundred thirty-one, as amended, or it may exercise the power of eminent domain in the manner now or which may be hereafter provided by any other statutory provisions for the exercise of the power of eminent domain. Property already devoted to a public use may be acquired in like manner: Provided, That no real property belonging to the municipality, the county or the State may be acquired without its consent. When an authority has found and determined by resolution that certain real property described therein is necessary for a redevelopment project or for its purposes under this article, the resolution shall be conclusive evidence that the acquisition of such real property is necessary for the purposes described therein.

The Urban Renewal Authority Law requires that before an urban renewal authority like CURA may exercise the power of eminent domain with respect to a particular parcel of property, there must be certain predicate substantive and procedural determinations and actions—by both the governing legislative body of the municipality or county that has established the authority, and by the urban renewal authority itself. *See W.Va.Code*, 16–18–1 to –29. We may omit a general discussion of these predicate requirements, because in the instant case it is not disputed that they were complied with and satisfied.

Specifically, prior to CURA's March 1997 filing of a condemnation petition regarding the Courtland Property, the following occurred:

On September 4, 1984, based on an area survey, the Charleston City Council declared

that a specifically delineated "Project Area" in which the Courtland Property is wholly located was a "slum and blighted" area.[1] Based on the area survey and this declaration, an urban renewal plan ("the Plan") for the Project Area was prepared.

On August 8, 1985, CURA, having modified the Plan, adopted the Plan and recommended it to Charleston City Council.

On September 3, 1985, the Charleston City Council approved the Plan. The Plan, which is in effect until January 1, 2005, specifically provides for the acquisition and development of the Courtland Property as part of a unified commercial district.

On May 8, 1996, the Commissioners of CURA authorized the acquisition of the Courtland Property. Negotiations between CURA and Courtland about a purchase were unsuccessful. On December 11, 1996, CURA voted to initiate eminent domain proceedings, followed by CURA's March 30, 1997 filing of a condemnation petition in the Circuit Court of Kanawha County.

Courtland filed a "Motion to Deny" in response to CURA's petition. On July 17, 1997, the circuit court denied Courtland's motion, ruling that CURA had the right to acquire the property by eminent domain. Subsequently the circuit court reaffirmed its July 17, 1997 ruling, and at CURA's request appointed commissioners to determine what fair market value compensation should be paid by CURA for the Courtland Property.

■ Courtland appealed the circuit court's actions to this Court. In an eminent domain proceeding, once an order adjudicating the right to take has been entered, the landowners can apply for a writ of error and supersedeas notwithstanding the fact that the order is interlocutory in other regards. Syllabus Point 2, *Handley v. Cook*, 162 W.Va. 629, 252 S.E.2d 147 (1979). We accepted Courtland's appeal, but we permitted the valuation process to continue while we considered the appeal.

## II.

### Standard of Review

The circuit court did not resolve any factual disputes in making the rulings that we are reviewing—rather, the circuit court applied the law to undisputed facts. We review a circuit court's rulings on questions of law *de novo*. Syllabus Point 1, *Public Citizen, Inc. v. First National Bank in Fairmont*, 198 W.Va. 329, 480 S.E.2d 538 (1996).

## III.

### Discussion

Courtland assigns the following enumerated errors by the circuit court: (1) the court erred in not making findings of fact in allowing CURA's eminent domain proceeding to go forward; (2) the court erred in allowing the eminent domain proceeding to go forward because the Courtland Property is not slum or blighted property; (3) the court erred in allowing the eminent domain proceeding to go forward because the proceed-

---

1. *W.Va.Code*, 16–18–3 [1951] states in pertinent part:

(j) "Slum area" shall mean an area in which there is a predominance of buildings or improvements (or which is predominantly residential in character), and which, by reason of dilapidation, deterioration, age or obsolescence, inadequate provision for ventilation, light, air, sanitation, or open spaces, high density of population and overcrowding, or the existence of conditions which endanger life or property by fire and other causes, or any combination of such factors, is conducive to ill health, transmission of disease, infant mortality, juvenile delinquency and crime, and is detrimental to the public health, safety, morals or welfare.

(k) "Blighted area" shall mean an area (other than a slum area) which, by reason of the predominance of defective or inadequate street layout, faulty lot layout in relation to size, adequacy, accessibility or usefulness, unsanitary or unsafe conditions, deterioration of site improvement, diversity of ownership, tax or special assessment delinquency exceeding the fair value of the land, defective or unusual conditions of title, improper subdivision or obsolete platting, or the existence of conditions which endanger life or property by fire and other causes, or any combination of such factors, substantially impairs or arrests the sound growth of the community, retards the provision of housing accommodations or constitutes an economic or social liability and is a menace to the public health, safety, morals, or welfare in its present condition and use.

ing fails to state a specific intended public use; (4) the court erred in allowing the eminent domain proceeding to go forward because CURA failed to prove that there is a "public use" for the Courtland Property; (5) the court erred in allowing the eminent domain proceeding to go forward because CURA failed to comply with eminent domain procedures; (6) the court erred in allowing the eminent domain proceeding to go forward because CURA abused its discretion in relying upon an outdated determination of "blight;" and (7) the court erred in allowing the eminent domain proceeding to go forward because the circuit court failed to consider evidence that the Courtland Property is not blighted.

■ Taking up the assigned errors in the order that they are listed by Courtland, we first conclude that the circuit court was not required to make findings of fact in allowing the eminent domain proceeding to go forward over Courtland's objection.

The only factual issue raised by Courtland in response to CURA's petition was whether the Courtland Property and/or the Project Area were "slum or blighted" in March of 1997 at the time the eminent domain proceeding was filed. We determine *infra* that this factual issue was not within the circuit court's power to review or determine. Therefore, because there were no material factual issues to resolve, specific findings of fact were not necessary to the circuit court's ruling and the circuit court did not err in this regard.

## A.

### *Slum and Blight Conditions*

■ We next consider Courtland's argument that the Courtland Property itself, standing alone, was not "slum or blighted" property at the time CURA's eminent domain proceeding was filed, thus precluding the exercise of eminent domain by CURA.

This argument fails because under *W.Va. Code,* 16–18–1 to –29 the issue is not whether an individual property is "slum" or "blighted" property. The issue is whether an "area," typically composed of many individual parcels of property, is a slum or blighted area.

If an area is in such a condition, then an authority may go forward with an urban redevelopment plan, including the use of eminent domain to acquire properties within the area. *See, e.g., W.Va.Code* 16–18–4(b) [1957], which states:

> The governing body of a community shall not adopt a resolution … [establishing a redevelopment authority] unless it finds: (1) That one or more slum or blighted *areas* (as herein defined) exist in such community, and (2) That the redevelopment of such *area or areas* is necessary in the interest of the public health, safety, morals or welfare of the residents of such community.

(Emphasis added.) *See also* the statutory definitions of "slum *area"* and "blighted *area"* at note 1 *supra.*

This "individual property" versus "area" distinction was discussed in the leading case of *Berman v. Parker,* 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954). *Berman* is instructive on many of the issues that we address in the instant case.

In *Berman,* the United States Supreme Court considered an owner's action to enjoin the taking of his property by eminent domain pursuant to the District of Columbia Redevelopment Act of 1945. In *Berman,* the Supreme Court stated:

> We deal, in other words, with what traditionally has been known as the police power. An attempt to define its reach or trace its outer limits is fruitless, for each case must turn on its own facts. The definition is essentially the product of legislative determinations addressed to the purposes of government, purposes neither abstractly nor historically capable of complete definition. Subject to specific constitutional limitations, when the legislature has spoken, the public interest has been declared in terms well-nigh conclusive. In such cases the legislature, not the judiciary, is the main guardian of the public needs to be served by social legislation. … [Citations omitted.] This principle admits of no exception merely because the power of eminent domain is involved. The role of the judiciary in determining whether that

power is being exercised for a public purpose is an extremely narrow one. [Citations omitted.]

\*     \*     \*

*Property may of course be taken for this redevelopment which, standing by itself, is innocuous and unoffending* . . . If owner after owner were permitted to resist these redevelopment programs on the ground that his particular property was not being used against the public interest, integrated plans for redevelopment would suffer greatly. The argument pressed on us is, indeed, a plea to substitute the landowner's standard of the public need for the standard prescribed by Congress. But as we have already stated, community redevelopment programs need not, by force of the Constitution, be on a piecemeal basis—lot by lot, building by building.

It is not for the courts to oversee the choice of the boundary line nor to sit in review on the size of a particular project area. Once the question of the public purpose has been decided, the amount and character of land to be taken for the project and the need for a particular tract to complete the integrated plan rests in the discretion of the legislative branch.

\*     \*     \*

The rights of these property owners are satisfied when they receive that just compensation which the Fifth Amendment exacts as the price of the taking.

2. *See, e.g., State ex rel. United States Steel v. Koehr*, 811 S.W.2d 385, 389 (Mo.1991), in which the court, citing *Berman*, stated:

> It is apparent that the owner of each tract of land in a blighted area cannot be permitted to resist redevelopment programs on the ground that his property is not being taken for a public use.
>
> \*     \*     \*
>
> [t]he fact that relator's property is not blighted is irrelevant to the question of public use.

See also *Grunwald v. Community Development Authority of the City of West Allis*, 202 Wis.2d 471, 486, 551 N.W.2d 36, 42 (1996) (". . . the municipality may focus on the general overall character of the area and its structures and consider the area in the context of its surrounding neighbors."); *White v. Redevelopment Authority of the County of Washington*, 147 Pa.Cmwlth. 175, 176, n. 1, 607 A.2d 314, 314, n. 1 (1992) ("It is irrelevant . . . that White's property is sound

348 U.S. at 32, 35–36, 75 S.Ct. at 102, 104, 99 L.Ed. at 37–39. (Emphasis added.)

Thus, *Berman* (and other cases [2] following *Berman* ) stand for the proposition that it is essentially irrelevant whether a particular parcel of property is itself dilapidated, slum or blighted property—if the parcel is located in an area that has been properly designated as a slum or blighted area.

We conclude that an individual parcel of property that is not dilapidated or does not otherwise contribute to the determination that an area is a slum or blighted area is nevertheless subject to acquisition by eminent domain pursuant to *W.Va.Code*, 16–18–8 [1951], if the parcel of property in question is located within a properly designated slum or blighted area.

Therefore, the circuit court did not err in rejecting Courtland's challenge to CURA's condemnation petition based on the allegedly "non-blighted" condition of the Courtland Property.

■ We next turn to Courtland's related argument that there are now no longer blight or slum conditions in the overall Project Area. (Courtland does not challenge the validity of the 1984 determination by Charleston City Council that there were blight or slum conditions in the overall Project Area [3] in 1984; nor does Courtland otherwise challenge the procedural or substantive validity of the adoption of the Plan.)

and itself is not blighted. The fact that an owner's property is sound is not sufficient to prevent its condemnation when it is located in and completely encapsulized by an area properly determined to be blighted").

3. Courtland does not dispute CURA's contention that Courtland has been aware of the Plan since it was adopted in 1985 and has been aware that the plan called for CURA's acquisition of the Courtland Property. Although we do not decide the question, we observe that the City Council's adoption of the Plan in 1985 could arguably have been challenged in a court proceeding at the time of its adoption, under the West Virginia Declaratory Judgments Act, *W.Va.Code*, 55–13–1 to –1. *See Kisner v. City of Fairmont*, 166 W.Va. 145, 272 S.E.2d 673 (1980) (contractors had standing to contest municipal zoning ordinance); *see also Shobe v. Latimer,* 162 W.Va. 779, 253 S.E.2d 54 (1979) (Declaratory Judgments Act is remedial and should be liberally construed).

Courtland argues that the 1984 findings of blight and slum conditions are "outdated." Courtland contends that the circuit court should have taken evidence in a *de novo* proceeding, and should have found that the Courtland Property is no longer in a slum or blighted area. Upon such a finding, says Courtland, the circuit court should have found: (a) that the instant eminent domain proceeding is unconstitutional because the condemnation does not now serve a "public use" (*see* discussion *infra* at III. B); and (b) that the instant eminent domain proceeding is *ultra vires*, because the statutory prerequisites of blight or slum conditions are no longer present.

Courtland does not explicitly contend that CURA no longer has the authority to engage in other redevelopment activities in the Project Area, but this conclusion would be the logical result of accepting Courtland's argument. If a present lack of slum or blight conditions in the Project Area is fatal to CURA's attempt to acquire the Courtland Property by eminent domain, such a lack would be similarly fatal to all exercises by CURA of its authority to acquire any property in the Project Area—including and particularly by eminent domain.

In support of the argument that the circuit court should have considered the claim that there are no longer blight or slum conditions in the Project Area, Courtland cites to a number of cases where courts have overturned determinations of blight or slum conditions—in the context of challenges to urban redevelopment plans.

However, an examination of those cases shows that each is different from the instant case. Taken together, the cases cited by Courtland do not support Courtland's position.

In *Regus v. City of Baldwin Park*, 70 Cal.App.3d 968, 139 Cal.Rptr. 196 (1977), city residents successfully challenged redevelopment plan ordinances immediately after they were passed, on the grounds that there was no blight in the project area.

In *Bristol Redevelopment and Housing Authority v. Denton*, 198 Va. 171, 93 S.E.2d 288 (1956), the court concluded that an initial determination by a redevelopment authority that there was a blighted area was contrary to the overwhelming evidence—and that therefore the redevelopment authority and the city had not established a sufficient basis to implement a redevelopment plan.

In *Sweetwater Valley Civic Ass'n v. National City*, 18 Cal.3d 270, 133 Cal.Rptr. 859, 555 P.2d 1099 (1976), a civic association sought judicial review of a determination that an area was "blighted." The applicable statutes held that a legislative determination that an area is blighted was a conclusive presumption, unless the determination was judicially challenged within 60 days of the determination. Because the judicial challenge was timely, the *Sweetwater* court reviewed the "blighted" determination, finding that it was not supported by sufficient evidence.

And in *Emmington v. Solano County Redevelopment Agency*, 195 Cal.App.3d 491, 237 Cal.Rptr. 636 (1987), the local Board of Supervisors approved a redevelopment plan, based on a finding of blight, on December 13, 1983. The plan and the finding were immediately challenged in court, on January 13, 1984—and the court ultimately found that there was insufficient evidence in the record to justify a finding of blight.

In each of the foregoing cases (and in several other cases [4] that are cited by Courtland) there was a challenge to the validity of an *initial determination* that there were

---

**4.** In *AAAA Enterprises v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 553 N.E.2d 597 (1990), a landowner in an area that had been determined to be blighted filed a declaratory judgment action challenging that determination by the city council. The court held that the "blighted area" determination was reviewable by a court under a deferential "abuse of discretion" standard; and reversed a summary judgment decision against the landowner. Similarly, in *Apostle v. City of Seattle*, 70 Wash.2d 59,

422 P.2d 289 (1966), the court held that a city council's determination of blight must be supported by substantial and specific evidence, and may not be arbitrary and capricious or merely conclusory. And in *Katz v. Dade County*, 367 So.2d 277 (Fla.App.1979), the court concluded that the county had presented no evidence—not even a development plan—that supported a determination of the reasonable necessity for the eminent domain proceeding in question.

blight or slum conditions in an area—and in most cases, the challenge was made shortly after the initial determination.

By contrast, in the instant case Courtland is not challenging the validity of the initial determination of blight and slum conditions in the Project Area. Rather, Courtland is asking the circuit court to make a new factual determination, based on allegedly new and changed circumstances. Moreover, Courtland's request comes over a decade after the Project Area was properly designated as a slum and blighted area.

Courtland does not point us to any provision of law that authorizes a circuit court to make such a *de novo* determination. It appears to us that asking a circuit court to make such a determination *de novo,* as opposed to asking a court to review a city council or authority determination under an appropriate standard of review, raises substantial issues of exhaustion of remedies, separation of powers, and similar concerns.

Additionally, as the Supreme Court held in *Berman, supra,* the viability of an incremental, multi-year, integrated plan for the overall redevelopment of a slum or blighted area would be fatally compromised if challenges to the continued need for and legitimacy of the plan based on allegedly changed circumstances were allowed as defenses to a condemnation petition—each time an urban renewal authority seeks to acquire property to accomplish the purposes of the plan. We are not directed to nor have we found any cases or statutes suggesting that such challenges are, have been, or should be allowed.

Urban renewal plans and their long-term goals would be crippled in their intended purpose of economic revitalization, if they could be interrupted and short-circuited just when the conditions that gave rise to the plan have arguably begun to be abated. Again, we are not directed to any cases or statutory language suggesting that such interruption or short-circuiting has been or should be permitted.

As the Supreme Court stated in *Berman, supra:* "[o]nce the question of the public purpose has been decided, the amount and character of land to be taken for the project

and the need for a particular tract to *complete the integrated plan* rests in the discretion of the legislative branch." 348 U.S. at 35–36, 75 S.Ct. at 104, 99 L.Ed. at 39. (Emphasis added.)

Our approach to this question is further shaped by our understanding of the deference that our case law has stated must be afforded to legislative determinations of the need by a public body to exercise eminent domain for a public use, and the limited role of courts in reviewing such determinations. *See* discussion *infra* at III. B.

■ We conclude that absent extraordinary circumstances, the authority of an urban renewal authority acting under the provisions of *W.Va.Code,* 16–18–1 to –29 to implement an approved and ongoing redevelopment plan by using the power of eminent domain under *W.Va.Code,* 16–18–8 [1951] may not be challenged during the period of the plan simply on the basis that the slum or blighted conditions which provided the initial basis for the adoption of the plan no longer exist.

Therefore, the circuit court did not err in denying Courtland's challenge to the condemnation petition based on Courtland's contention that there were no longer slum or blight conditions in the Project Area.

### B.

### *Public Use*

■ Courtland also asserts that the circuit court erred in allowing the eminent domain proceeding to go forward because CURA's petition allegedly fails to state a specific intended "public use" for the Courtland Property—and because CURA allegedly failed to prove that there is a "public use" for the Courtland Property.

■ Article III, Section 9 of the *West Virginia Constitution* authorizes the taking of private property by eminent domain only for "public use," and with "just compensation" to the property owner. *Id.* A claim that property is not being taken for a public use may be raised in opposition to a condemnation petition. "In a proceeding in eminent domain the question whether the proposed

use of property is public or private ... [is] judicial in ... nature." Syllabus Point 1, *State by State Road Comm'n v. Bouchelle*, 137 W.Va. 572, 73 S.E.2d 432 (1952).

There was a time when this Court's cases took a more narrow view of what could constitute a "public use," and Courtland principally cites to and relies upon these older cases.

In one such case, *Carnegie Natural Gas v. Swiger*, 72 W.Va. 557, 570, 79 S.E. 3, 9 (1913), this Court said that before an eminent domain acquisition could occur, it first must be established:

(1) That the use which the public is to have of the property taken must be fixed and definite, and on terms and charges fixed by law; (2) that such public use must be a substantial beneficial one, obviously needful for the public, which it cannot do without, except by suffering great loss or inconvenience; (3) that the necessity for condemnation must be apparent and that the public need must be an imperious one.

In another case, *Charleston Natural Gas Co. v. Lowe and Butler, Trustees*, 52 W.Va. 662, 667–68, 44 S.E. 410, 412 (1901), this Court stated:

What is a public use is incapable of exact definition ... [but] the establishment of furnaces, mills and manufactures, the building of churches and hotels, and other similar enterprises ... *lie without the domain of public uses* for which private ownership may be displaced by compulsory proceedings ... it is not enough that the general prosperity of the community will be promoted by the enterprise or purpose for which the property is sought to be taken....

(Emphasis added, citations omitted.)

Under these narrow definitions of a "public use," the taking of land by an urban redevel-

opment authority like CURA, as part of creating a "unified business district"—say, for sale to a hotel builder—would not be a "public use."

However, this narrow view of what may constitute a "public use" has broadened over time. This broadening was recognized in *State ex rel. City of Charleston v. Coghill*, 156 W.Va. 877, 880–81, 207 S.E.2d 113, 116 (1973), where this Court stated:

Prior decisions of this Court have continuously enlarged the sphere of permissible government action in what was formerly considered exclusively the private sector. In *Chapman v. Housing Authority*, 121 W.Va. 319, 3 S.E.2d 502 (1939) this Court held valid the West Virginia Housing Act which had as its primary purpose slum clearance. In *State ex rel. West Virginia Housing Development Fund v. Copenhaver*, supra, [153 W.Va. 636, 171 S.E.2d 545 (1969)] this Court held constitutional Chapter 31, Article 18, Section 1 et seq. of the Code of West Virginia, 1931, as amended, which provided for the West Virginia Housing Development Fund. The Fund had as its purpose an increase in the amount of housing available to West Virginia residents. Similarly in *County Court v. Demus*, supra, [148 W.Va. 398, 135 S.E.2d 352 (1964)] this Court reviewed the Industrial Development Bond Act, Chapter 13, Article 2C, Section 1 et seq. of the *Code of West Virginia*, 1931, as amended, which permitted a county or municipality to acquire property for the purpose of leasing it for industrial purposes, and this Court again found the legislation to be without constitutional infirmities. These cases clearly establish the broad sphere of permissible governmental activity in areas where the Legislature determines that government action is a necessary supplement to private enterprise to alleviate social problems.[5]

---

**5.** In *Chapman v. Huntington Housing Authority*, 121 W.Va. 319, 331, 3 S.E.2d 502, 508 (1939), this Court stated:

[t]he eradication of slum areas would seem to rest upon the firm foundation of the police power which inherently resides in the legislative branch of every state government.... [t]he conception of a public purpose must expand within constitutional limits with the broaden-

ing of the functions of government and the growth of the country.

In *Handley v. Cook*, 162 W.Va. 629, 643, 252 S.E.2d 147, 154 (1979), (McGraw, J., dissenting), stated in Appendix A:

The rule of strict construction of the public use requirement was steadily eroded in the federal courts and many state courts. This erosion has been attributed to "[t]he expanding

■ Additionally, the statute that gives CURA the authority to exercise eminent domain powers requires that essentially conclusive deference is to be given to CURA's determinations as a public body[6] as to whether, when, where and how to exercise its powers to advance the public use of redevelopment. *W.Va.Code,* 16–18–8 [1951] states in pertinent part:

> When an authority has found and determined by resolution that certain real property described therein is necessary for a redevelopment project or for its purposes under this article, the resolution *shall be conclusive evidence* that the acquisition of such real property is necessary for the purposes described therein.

(Emphasis added.)

■ Consequently, we hold that for eminent domain purposes under *W.Va.Code,* 16–18–8 [1951] an urban redevelopment authority states a legitimate and adequately specific public use for a parcel of property when the authority has determined that acquisition of the property is necessary to accomplish the purposes of a duly approved redevelopment plan.

Thus, CURA adequately stated a legitimate intended "public use" for the Courtland Property by determining in the Plan that acquisition of the Courtland Property by CURA was necessary for developing a unified business district in the Project Area. Courtland's argument that the circuit court erred in not finding that CURA's condemnation petition was insufficient to establish a constitutionally legitimate public use is without merit.

As to Courtland's other enumerated assignments of error, they are essentially duplicative of or embodied within the assignments that we have already discussed. The foregoing discussion serves as a sufficient basis on which we may and do rule that Courtland's other assignments of error are without merit.

## IV.

### Conclusion

The ruling of the Circuit Court of Kanawha County is affirmed.

Affirmed.

social philosophy of the present century (which) has brought in the courts an almost complete abandonment of the 'use by the public' test ..." (Citation omitted.) This expanding social policy refers in large part to the government-sanctioned redevelopment of urban slums. This expansion of "public use" received its greatest boost in *Berman v. Parker,* 348 U.S. 26, [75 S.Ct. 98, 99 L.Ed. 27] (1954), which approved a federal urban renewal as a "public benefit," casting aside the narrower "public use" mandate because the police power as well as the power of eminent domain was involved.

**6.** This opinion addresses only the degree of deference to be given to determinations by public bodies like CURA in their exercise of eminent domain. We do not address the exercise of eminent domain by private entities such as utilities that exercise the power of eminent domain pursuant to a legislative grant; nor do we hold that such private entities are to be afforded the same degree of deference in their exercise of eminent domain that is afforded to eminent domain actions by public bodies.