No. 15-0919 – *Mountain Valley Pipeline v. McCurdy*

FILED

**November 15, 2016**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Chief Justice Ketchum, dissenting:

I personally do not believe private, for-profit, corporations should have the power to take a person's land by eminent domain. However, the laws enacted by our Legislature clearly allow such a taking.

This case presents a different wrinkle in the law of eminent domain: A private, for-profit, corporation seeks to take the landowner's property through the power of eminent domain to build a natural gas transportation pipeline. Before taking the property, the corporation seeks entry onto the land to survey the proposed route of the pipeline.

Our Legislature has expressly authorized private corporations to exercise the power of eminent domain if the land is taken for a "public use."[1] The Legislature has provided that a "public use" for which private property may be taken includes pipelines for transporting natural gas.[2] The Legislature has further provided that a private corporation taking property for a "public use" may enter upon lands to examine and survey the land before it takes the land.[3] Therefore, a private corporation may enter upon land that will be appropriated for a "public use" to examine and survey the land. It is

---

[1] W.Va. Code, 54-1-1.
[2] W.Va. Code, 54-1-2(a)(3).
[3] W.Va. Code, 54-1-3.

1

clear that the private corporation must be able to establish a "public use" before it can enter to examine and survey the land.

The issue in this case is simply whether the proposed right-of-way for a gas transportation pipeline across private property is for a "public use." If the taking is for a "public use" then the private corporation has the legal right to enter the property to inspect and survey the land before filing a condemnation action.

The private corporation in this case is building a north-south pipeline to get Marcellus and Utica gas in North Central West Virginia to market. The gas pipeline will run through West Virginia to a point outside of West Virginia. Once outside the State, the gas will be pooled with other gas and sold for a profit to gas companies who will distribute it in interstate commerce for public use. It is unknown if any gas companies in West Virginia will buy any of the pooled gas for residential or industrial use in West Virginia.

It is undisputed that 95% of the natural gas that will flow through the pipeline will come from West Virginia land. There is no question that the bulk of this gas is coming from under the land of many, many West Virginians in North Central West Virginia who will benefit and be paid royalties for the gas under their land. The gas pipeline will transport two billion cubic feet of West Virginia natural gas a day to market. Not only will many, many landowners benefit, the gas pipeline will also benefit West Virginia's gas well drillers and workers in the gas fields. Additionally, it will allow the

State to collect large amounts of severance tax on natural gas that is extracted from West Virginia land.

It is also undisputed that the existing natural gas transportation pipelines in West Virginia are at capacity and cannot carry this gas. In other words, this West Virginia natural gas will have to be trucked to market.[4] The evidence at the hearing demonstrated that without the pipeline to transport the gas from the drilling areas to market, the drilling will likely not be economical and will not occur.

The majority opinion and the circuit judge narrowly define the term "public use," even though our Court has continually expanded the definition. They decline to follow the modern approach adopted in the well-reasoned cases of the majority of jurisdictions in the United States and the U.S. Supreme Court.

The circuit judge in defining "public use" used the "fixed and definite" definition adopted in 1883 by *Varner v. Martin*.[5] This definition was last used by our Court in the 1913 case of *Carnegie Natural Gas v. Swiger*.[6] In *Swiger*, our Court held that "pipeline companies organized for transporting gas must serve the people with gas, under reasonable and proper regulations, along the entire line traveled."[7] Of course, there were no interstate transportation pipelines carrying natural gas to urban centers in 1913.

---

[4] There is also another natural gas pipeline in West Virginia that is proposed. The application to build this pipeline is before the Federal Energy Regulatory Commission.
[5] *Varner v. Martin*, 21 W.Va. 534, 535 (1883).
[6] *Carnegie Natural Gas Co. v. Swiger*, 72 W.Va. 557, 79 S.E. 3, 9 (1913).
[7] *Id.*

In a 1998 case, *Charleston Urban Renewal Auth. v. Courtland Co.,* our Court decided to no longer follow the narrow "fixed and definite" use test.[8] The Court referenced the narrow test used in *Swiger* and stated "[t]here was a time when this Court's cases took a more narrow view of what could constitute a 'public use'" and recognized that "what may constitute a 'public use' has been broadened over time."[9]

It is a judicial question, after giving due respect to a legislative declaration, whether the purpose of the taking is connected to a valid "public use."[10] The vast majority of state courts and the U.S. Supreme Court have endorsed a more expansive definition of "public use." They define "public use" as a "public purpose" or "public advantage." "Any exercise of eminent domain which tends to enlarge resources, increase industrial energies, or promotes the productive power of any considerable number of inhabitants of a state or community manifestly contributes to the general welfare and prosperity of the whole community and thus constitutes a valid public use."[11] "Public use" is considered "public benefit" and it is not considered essential that the entire community or even a considerable portion of the community should directly participate in any improvement in order that it constitutes a "public use."[12] Our Court should adopt this enlightened definition of "public use."

---

[8] *Charleston Urban Renewal Auth. v. Courtland Co.*, 203 W.Va. 528, 509 S.E.2d 569 (1998).
[9] *Id.,* 203 W.Va. at 536, 509 S.E.2d at 577.
[10] *State v. Stahl*, 141 W.Va. 233, 89 S.E.2d 693 (1955); *Nichols on Eminent Domain 3d* §7.03 [11] [6].
[11] *Kelo v. City of New London*, 545 U.S. 469 (2005) and the cases cited in *Nichols on Eminent Domain 3d* § 702 [1] [3].
[12] *Id.*

4

There is no doubt that the natural gas transportation pipeline will enlarge West Virginia resources, increase industrial energies, and promote productive power in West Virginia. Moreover, it will increase prosperity in West Virginia through the increased amount of severance tax collected on natural gas extracted from West Virginia land.

Although the parties did not brief, and the majority did not discuss, the modern "public purpose" or "public advantages" definitions of "public use," I would adopt this more enlightened view. Under the modern definition of "public use" the pipeline company should prevail.

I dissent.