580 So.2d 199 (1991)
James H. BATMASIAN, Appellant,
v.
BOCA RATON COMMUNITY REDEVELOPMENT AGENCY, a Public Body Corporate and Politic of the State of Florida, Appellee.
No. 90-1362.
District Court of Appeal of Florida, Fourth District.
April 24, 1991.
Certification and Rehearing Denied June 20, 1991.
Robert A. Sweetapple of Sweetapple, Broeker & Varkas, P.A., Boca Raton, and Daniel J. Webster of Dunn, Webster & Swain, Daytona Beach, for appellant.
H. Adams Weaver and Mark B. Kleinfeld of Jones, Foster, Johnston & Stubbs, P.A., West Palm Beach, for appellee.
POLEN, Judge.
James Batmasian and others (Batmasian) bring this appeal from the trial court's non-final order granting the petition for order of taking in an eminent domain proceeding filed by appellee Boca Raton Community Redevelopment Agency, Inc. (hereinafter the CRA). In its order, the trial court directed the CRA to deposit $490,000.00, and further directed Batmasian to surrender his parcel of land upon proof of such deposit, pursuant to the quick taking provisions of Chapter 74 of the Florida Statutes. This court granted Batmasian's motion for temporary stay of that order, until resolution of this non-final appeal. We now affirm the trial court's order as to all points Batmasian raises on appeal.
We commend both parties for an excellent effort in briefing the issues presented by this appeal. We have conducted an extensive analysis of appellant's eight (8) points on appeal, most of which concern the validity of resolutions and ordinances enacted by the City of Boca Raton which lead to the formation of the CRA, as well as its authority to utilize the eminent domain laws of this state to take property for the project which has come to be known as Mizner Park.[1] We find that appellant has failed to demonstrate error requiring reversal of the trial court's well-reasoned order.
Nonetheless, because it is the linchpin of appellant's argument, we address the lower court's finding that the CRA presented competent, substantial evidence to support the Boca Raton City Council's finding that blight existed in 1980 in downtown Boca Raton.
Section 163.340(8), Florida Statutes (1979), defines "blighted area" as follows:
(8) "Blighted area" means an area in which there are a substantial number of *200 slum, deteriorated, or deteriorating structures and conditions which endanger life or property by fire or order causes or one or more of the following factors which substantially impairs or arrests the sound growth of a county or municipality and is a menace to the public health, safety, morals, or welfare in its present condition and use:
(a) Predominance of defective or inadequate street layout;
(b) Faulty lot layout in relation to size, adequacy, accessibility, or usefulness;
(c) Unsanitary or unsafe conditions;
(d) Deterioration of site or other improvements;
(e) Tax or special assessment delinquency exceeding the fair value of the land; and
(f) Diversity of ownership or defective or unusual conditions of title which prevent the free alienability of land within the deteriorated or hazardous area.
Pursuant to section 163.355, Florida Statutes (1979), a finding that a blighted area exists in a municipality is a prerequisite to the exercise of eminent domain powers under Chapter 163, part III.
In 1980, the City of Boca Raton adopted resolution number 162-80, referred to by the parties as the "blight resolution." This resolution stated that several of the factors included in the definition of blight in section 163.340(8)(a) existed in downtown Boca Raton. During trial, Batmasian challenged the statements contained in the blight resolution, and conflicting testimony was introduced with respect to the question of whether blight existed in downtown Boca Raton in 1980.
The trial court concluded:
1. The Florida Legislature has expressed its position on slum and blighted areas in its finding that both constitute a serious and growing menace, injurious to the public health, safety, morals, and welfare of the residents of the state.
[T]he existence of such areas contributes substantially and increasingly to the spread of disease and crime, constitutes an economic and social liability imposing onerous burdens which decrease the tax base and reduce tax revenues, substantially impairs or arrests sound growth ... and that the prevention and elimination of slums and blight is a matter of state policy and state concern... . Section 163.355(1), Florida Statutes (1989).
2. Under Section 163.355, prior to any municipality exercising its power of eminent domain, the governing body of the municipality is required to adopt a resolution finding that a blighted area exists and that the redevelopment of that area is necessary in the interest of the public health, safety, morals or welfare.
... .
4. It is well-established in Florida law that the power of eminent domain is one of the most harsh proceedings known. When the sovereign delegates its power of eminent domain to an agency, strict construction must be given against the agency asserting the power.
5. In this case, the burden is on the agency to establish a public purpose and reasonable necessity for the taking. Baycol, Inc. v. Downtown Development Authority, 315 So.2d 451 (Fla. 1975); Peavy-Wilson Lumber Co. v. Brevard County [159 Fla. 311], 31 So.2d 483 (Fla. 1947).
6. The parties disagree on the standard that the court should apply in reviewing the 1980 resolution declaring blight that was adopted by the City Council... .
7. The court need not resolve the legal issue in dispute because the Agency [the CRA] has presented competent, substantial evidence to support the City Council's finding that blight existed in 1980 in downtown Boca Raton. The 1980 resolution of the City Council is, therefore, valid.
... .
9. Based upon the evidence produced at trial, the prerequisites for [a] finding of necessity pursuant to Section 163.355 exist.
Review of the record supports the trial court's conclusion that the CRA presented competent, substantial evidence that blight, *201 as defined in Chapter 163, existed in 1980 in downtown Boca Raton.
Further, we find no merit in appellant's argument that the CRA may not exercise its power of eminent domain in 1989, because blight which may have existed in 1980 no longer existed in 1989. Appellant has cited this court to no case law in support of this argument. The intent of Chapter 163, part III, is to allow a redevelopment plan for an area. A logical consequence of the implementation of a redevelopment plan in any particular area is that some conditions of blight which once existed will be eliminated. Therefore, it is unreasonable to expect that the CRA demonstrate the existence of the same level of blight in 1989 that was present when the redevelopment plan was initially adopted in 1982.
The order of the trial court is affirmed and the temporary stay ordered by this court on July 16, 1990, is vacated in accordance with this opinion.
HERSEY, C.J., and GARRETT, J., concur.
NOTES
[1] We note that appellant's points do not address that portion of the trial court's order which set the amount required to be deposited by the CRA at $490,000.00 for appellant's parcel.