811 So.2d 727 (2002)
Tony M. RUKAB and Aida T. Rukab, his wife, Appellants,
v.
CITY OF JACKSONVILLE BEACH, A Municipal Corporation, and the Jacksonville Beach Community Redevelopment Agency, A Body Politic and Corporation Created Under the Laws of the State of Florida, Appellees.
No. 1D00-4593.
District Court of Appeal of Florida, First District.
February 26, 2002.
Rehearing Denied April 3, 2002.
*728 Andrew Prince Brigham and Bruce B. Humphrey, of Brigham Moore, LLP, Jacksonville, for Appellants.
Stephen Stratford, of Stephen Stratford, P.A., and William S. Graessle, of Winegeart & Graessle, P.A., Jacksonville, for Appellees.
WOLF, J.
Tony M. Rukab and Aida T. Rukab, his wife, appeal from an order of taking in an eminent domain action. The court found that the appellees, City of Jacksonville Beach and the Jacksonville Beach Community Redevelopment Agency (the City), had shown a public purpose and reasonable necessity for taking the Rukabs' property.
The Rukabs raise a number of issues on appeal. The issue concerning public necessity has merit and requires reversal; two other issues also will be discussed: Whether a landowner whose property is being condemned pursuant to the Community Redevelopment Act of 1969 may challenge the designation of a "blighted" area during an eminent domain proceeding where another landowner within the area has previously litigated the issue; and whether a person who purchases property within an area previously designated as blighted under the Community Redevelopment Act of 1969 is precluded from challenging that designation in an eminent domain *729 proceeding. While the City makes compelling policy arguments for not allowing a challenge to the determination of blight under these circumstances, we find no legal support for precluding the landowner from raising the issue.
Pursuant to sections 163.330-.462, Florida Statutes, the Community Redevelopment Act (the Act), the Legislature has authorized counties and municipalities to exercise broad powers to rehabilitate, clear, and redevelop slum and blighted areas. Under the Act, the local government redevelopment agency has the specific power of eminent domain under Chapters 73 and 74, Florida Statutes, to clear urban blight by acquiring real property in a designated area. § 163.375, Fla. Stat. (2001). In the mid 1980's the City of Jacksonville Beach created the Jacksonville Beach Community Redevelopment Agency. The agency determined that a section of about 350 acres in the south end of Jacksonville Beach was a blighted area within the meaning of the Act,[1] and the agency created and implemented the Southend Community Redevelopment Plan to address the blight within that area. The City has been implementing the Redevelopment Plan by issuing requests for proposals for portions of the Redevelopment Area and then entering into development agreements with chosen developers. In 1994-95 Rukab, a local realtor, and his wife purchased three lots in the Redevelopment Area.[2] The Rukab property is zoned residential, but it is situated in the 20 acre South Beach Mixed Use Project area slated for retail and multiple family dwellings. To develop their three lots, the Rukabs could either go through the proposal process or request a rezoning and comprehensive plan amendment to develop their property in conformity with the Redevelopment Plan. In March 1997, the Rukabs requested a rezoning and comprehensive plan amendment for office and commercial use for their three lots. The City denied the request because appellants' proposed development was of insufficient size to be consistent with the Redevelopment Plan. In June 1998 the City entered into a development agreement with Sleiman Enterprises for the 20-acre South Beach Mixed Use Project to build a shopping center and multi-family apartments. Subsequently, in October 1998, the Rukabs informed the City that they had obtained purchase options on 10 additional lots and they wanted to develop them, but the Rukabs never applied for a rezoning and comprehensive plan amendment. In November 1999, the City, in furtherance of the development agreement with Sleiman, filed an action in eminent domain against various owners of property located in the 20-acre South Beach Mixed Use Project of the Redevelopment Area, including the Rukabs. The City alleged that the property was "needed and necessary for the purpose of developing the Southend Community Redevelopment Area." The Rukabs contested the taking.
In the trial court, the City argued that the only issue before the court in the eminent domain proceeding was just compensation since the court could take judicial notice that the 1997 order of taking in City of Jacksonville Beach v. White, No. 96-03185-CA (Fla. 4th Cir. Ct. June 25, 1996), a consolidated case involving six other *730 property owners in the Redevelopment Area, decided all other issues. The Rukabs admitted that the White order upheld the 1985 finding of blight and the 1987 delineation of the Redevelopment Area and found that the statutory requirements of the Act were met, but they contended that the City still had to establish public purpose and necessity; thus, the Rukabs sought de novo review of the 1985 blight determination and 1987 designation of the Redevelopment Area. The trial court in the instant case determined that because the order in White decided those issues, a de novo challenge would not be permitted.[3] Instead, the issues here were determined to be whether the Rukabs' property is situated within the Redevelopment Area and whether the proposed use of the property will be consistent with the Plan. The latter of the two included the issue of whether the City acted with fraud, illegality, or gross abuse of discretion in the taking. The trial court issued an order of taking, finding that the Redevelopment Plan had been adopted in accordance with a valid act of the legislature, the City had brought its action pursuant to the valid legislation, and the City had established a public purpose and a reasonable necessity for taking the Rukabs' land in furtherance of the Redevelopment Plan.
The Florida Constitution expressly prohibits the use of the power of eminent domain to take private property "except for a public purpose." Art. X, § 6, Fla. Const. The supreme court requires strict construction of statutes affording the power of eminent domain:
The power of eminent domain is one of the most harsh proceedings known to the law. Consequently, when the sovereign delegates this power to a political unity [sic] or agency, a strict construction must be given against the agency asserting the power. The burden is on the condemning authority to establish a public purpose and reasonable necessity for the taking.
We have been long committed in a consistent series of cases to the proposition that eminent domain cannot be employed to take private property for a predominantly Private use; it is, rather, the means provided by the constitution for an assertion of the public interest and is predicated upon the proposition that the private property sought is for a necessary public use. It is this public nature of the need and necessity involved that constitutes the justification for the taking of private property, and without which proper purpose the private property of our citizens cannot be confiscated, for the private ownership and possession of property was one of the great rights preserved in our constitution and for which our forefathers fought and died; it must be jealously *731 preserved within the reasonable limits prescribed by law.
Baycol, Inc. v. Downtown Dev. Auth. of the City of Fort Lauderdale, 315 So.2d 451, 455 (Fla.1975) (citations and footnotes omitted; bolded emphasis added; italics in original). The supreme court reiterated and clarified the condemnor's burden in an eminent domain proceeding under the Community Redevelopment Act of 1969 as follows:
In the first instance, the condemning authority is obliged to show a reasonable necessity for the condemnation. Once such a reasonable necessity is shown, the exercise of the condemning authority's discretion should not be disturbed in the absence of illegality, bad faith or gross abuse of discretion. Although it will not be presumed that a condemning authority abused its discretion or acted illegally or in bad faith in making its finding of reasonable necessity in a resolution of taking, such authority, in order to meet its burden, must put on some evidence of reasonable necessity for the taking. Once this is shown, however, the landowner must then either concede the existence of a necessity or be prepared to show bad faith or abuse of discretion as an affirmative defense.
City of Jacksonville v. Griffin, 346 So.2d 988, 990 (Fla.1977) (citations omitted).
The only public purpose supporting the taking of the Rukabs' land is the designation of blight over the entire area. Utilization of the power of eminent domain without a determination of blight would violate the Rukabs' rights guaranteed by Article X, section 6 of the Florida Constitution. This point is illustrated in City of Jacksonville v. Moman, 290 So.2d 105 (Fla. 1st DCA 1974), in which this court emphasized that the power of eminent domain cannot be used arbitrarily and unreasonably and that although a city "may designate an area as a slum ... such designation does not make it a slum." Id. at 107. In Moman, this court affirmed the lower court's determination that the City failed to show necessity; that is, the evidence did not support the slum designation. See id.
Two cases from the Fourth District Court of Appeal discuss the propriety of addressing the validity of a prior blight determination during an eminent domain proceeding. In Batmasian v. Boca Raton Cmty. Redevelopment Agency, 580 So.2d 199 (Fla. 4th DCA 1991), as here, the property owner appealed an order of taking in an eminent domain action under the Community Redevelopment Act. The appellate court stated that it had "conducted an extensive analysis" of the issues raised, "most of which concern the validity of resolutions and ordinances ... which lead to the formation of the [Boca Raton Community Redevelopment Agency], as well as its authority to utilize the eminent domain laws of this state to take property for the project which has come to be known as Mizner Park." Id. at 199 (emphasis added). At trial, "Batmasian challenged the statements contained in the blight resolution, and conflicting testimony was introduced with respect to the question of whether blight existed in downtown Boca Raton in 1980." Id. at 200. The trial court found that the "parties disagree[d] on the standard that the court should apply in reviewing the 1980 resolution declaring blight," but determined that resolution of this legal issue was not necessary "because the Agency ... has presented competent, substantial evidence to support the City Council's finding that blight existed in 1980 in downtown Boca Raton"; thus, the trial court found that the 1980 resolution was valid. Id. The fourth district concluded that its review of the record "supports the trial court's conclusion that the [Agency] presented competent, substantial evidence that blight, as defined *732 in Chapter 163, existed in 1980 in downtown Boca Raton." Id. at 200-01.
Subsequently, in JFR Inv. v. Delray Beach Cmty. Redevelopment Agency, 652 So.2d 1261 (Fla. 4th DCA 1995), a property owner challenged, in an eminent domain proceeding, a redevelopment agency's 1985 blight designation of a 2,000 acre area in which the landowner's property was situated. The fourth district addressed review as follows:
Initially, we conclude that the trial court did not err in holding that the city's action in establishing the redevelopment area is valid. The record supports the court's finding that there was sufficient evidence to support the resolutions establishing the [Delray Beach Community Redevelopment Agency] and that in doing so the city complied with all procedures required by law. The standard applicable to the trial court's review of the city council's action, in establishing the redevelopment area, is one of de novo review. The council, in making its decision to establish the 2,000 acre redevelopment area, following procedures authorized by state law, was essentially performing a legislative, rather than quasi-judicial function. Therefore, a "fairly debatable" standard applies to review of its action. The city council was acting as a legislative body in adopting policy regarding the subject portion of the city and was not making a determination regarding an individual parcel when it decided to designate the general area for redevelopment. Therefore, the trial court properly considered the substantial evidence presented to the court. The city's decision must be sustained unless clearly erroneous.
The record also supports the trial court's conclusion that the [Redevelopment Agency] had sufficient evidence before it to establish a reasonable necessity for the taking of this specific property. Once a reasonable necessity is shown, the exercise of the condemning authority's discretion should not be disturbed, absent bad faith or gross abuse of discretion.
Id. at 1262 (citations omitted).
We asked the City to present legal authority to support the trial court's decision to preclude evidence concerning the validity of the City's determination of blight. The City presented no such authority. The argument advanced by the City is one of policy, i.e., that it would be destructive of Chapter 163's purposes if a land owner was allowed to challenge in an eminent domain proceeding the factual basis for a local government's prior decision to engage in redevelopment activities by challenging the local government's finding that blight existed and that redevelopment activities were warranted. As the Rukabs point out, however, the Community Redevelopment Act contains no reference to a procedure whereby a person can challenge a "blight" designation, and there is no requirement in statute or case law that such challenge is required either at the time of the designation or upon adoption or modification of the Redevelopment Plan. While the City's argument has facial appeal, the question of placing time limits on challenges to blight determinations is one that should be addressed by the legislature and not the courts.[4]
We also find no legal support for the proposition that the previous circuit court *733 decision in White was legally binding on the Rukabs. The City does not argue that res judicata, collateral estoppel, or stare decisis apply, nor do we find support for the application of any of these principles in the record.
Finally, we find no legal support for the contention that the Rukabs are somehow precluded from asserting their constitutional rights within the eminent domain proceeding because they bought the property subject to the previous determination of blight. In Palazzolo v. Rhode Island, 533 U.S. 606, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001), the United States Supreme Court determined that purchasers of property subject to state regulation were not precluded from raising a claim of a regulatory taking even if they were aware of the regulation at the time they purchased the property. The court rejected Rhode Island's argument on this issue:
Were we to accept the State's rule, the postenactment transfer of title would absolve the State of its obligation to defend any action restricting land use, no matter how extreme or unreasonable. A State would be allowed, in effect, to put an expiration date on the Takings Clause. This ought not to be the rule. Future generations, too, have a right to challenge unreasonable limitations on the use and value of land.
Id., 121 S.Ct. at 2462-63. Thus, the Court concluded that "[a] blanket rule that purchasers with notice have no compensation right when a claim becomes ripe is too blunt an instrument to accord with the duty to compensate for what is taken." Id., 121 S.Ct. at 2463.
We see no reason to treat a direct condemnation action differently from an inverse condemnation claim in this context. In both cases, property owners are asserting their constitutional rights not to have the government take their property without just compensation. In the instant case, the Rukabs correctly point out that the designation of the area as "blighted" was not confiscatory in nature, nor was adoption of the Redevelopment Plan. See Florio v. City of Miami Beach, 425 So.2d 1161, 1162 (Fla. 3d DCA 1983) (indicating that mere adoption of redevelopment plan did not result in a taking). The first opportunity to challenge the propriety of the taking was during this eminent domain proceeding. Thus, even if there were other opportunities for challenging the designation, a property owner must still be afforded the opportunity for a full hearing in the eminent domain action. During this action, the City must meet the burden of showing public purpose and necessity.
We, therefore, reverse and remand for a new hearing on the issue of the public necessity for the taking.
VAN NORTWICK and PADOVA NO, JJ., concur.
NOTES
[1] Subsection 163.340(8) provides two definitions of "blighted area." The Southend Redevelopment Area was found to be blighted under paragraph (b): "An area in which there exists faulty or inadequate street layout; inadequate parking facilities; or roadways, bridges, or public transportation facilities incapable of handling the volume of traffic flow into or through the area, either at present or following proposed construction."
[2] The Rukabs purchased lots 100, 111, and 119 equaling a total of .47 acres, referred to as "Parcel 100".
[3] The trial court stated,

[H]ad this plan not been attacked back whenever it was in the 1980s, and had Judge Martin not reviewed it, in my view, that is an issue that could be raised at this point by a property owner whose land is being condemned. At some point there has to be a right of property [owners] to contest the development plan, and... the basis of my ruling is that that already has been done, and I'm going to get finality, and it needs to be finality to Judge Martin's ruling at that point.
The court also stated that public purpose and necessity were not issues to be decided, because they were "foreclosed and completed at the time ... the plan was adopted by the City of Jacksonville Beach, and it was reviewed after being contested by Judge Martin, and he approved it, okay." The court further explained, "A de novo attack would address whether or not, for example, there is a public purpose and was there blight and things of that nature. So there will be no de novo attack in this case prior to an order of taking."
[4] In addition, we would note that some protection is offered to the City as a result of two factors: 1) The City must only show that blight existed at the time of the resolution and not that it existed at the time of the subsequent taking. See Batmasian, 580 So.2d at 200; and 2) The City also has the benefit of the deferential standard of review of legislative action. See JFR Inv., 652 So.2d at 1262.