908 A.2d 111

**MAYOR AND CITY COUNCIL OF BALTIMORE**

v.

**NEIGHBORHOOD RENTALS, INC. et al.**

No. 1585 Sept. Term, 2005.

Court of Special Appeals of Maryland.

Sept. 21, 2006.

674

Sandra R. Gutman, Adam Levine (Ralph S. Tyer, City Sol., on the brief), Baltimore, MD, for Appellant.

John F. Dougherty (Brian S. Southard, Kramon & Grahm, P.A., on the brief), Baltimore, MD, for Appellees.

Panel: JAMES R. EYLER, KRAUSER and WOODWARD, JJ.

KRAUSER, Judge.

To obtain a permit to use the premises at 5525–5527 Harford Road[1] in Baltimore City for a "rent-to-own" store, specializing in "the sale, service and rental of electronics, appliances, and furniture," appellee Ed Knox filed an application for such a permit with the City's Department of Housing and Community Development ("DHCD"). Knox was then and presumably still is the managing member of appellee CMS Property, LLC, which owns the Harford Road property, and the vice president of appellee Neighborhood Rentals, Inc., which leases it.

Although initially approved, the application was ultimately denied by the DHCD, when it learned from the Baltimore Development Corporation that such stores, though permitted under applicable zoning regulations,[2] were prohibited at that location by the City's Hamilton Business Area Urban Renewal Plan ("Hamilton Plan" or "Plan"). The City's Board of Municipal and Zoning Appeals ("Zoning Board" or "Board") subsequently disapproved the application for the same reason.

Undeterred, appellees sought judicial review of the Board's decision in the Circuit Court for Baltimore City, claiming that

---

1. Although the permit application names "5525 Harford" and appellees refer only to that address in their brief, the circuit court refers to "5525–5527 Harford Road" in granting the requested use, as did the Zoning Board in denying it. As neither party suggests that the circuit court's order is in error as to the address of appellees's premises, we assume that appellees' reference to "5525" is merely shorthand for "5525–5527."

2. *See* Balt. City Zoning Code §§ 6–311, 6–312, 6–313, 9–408, 9–409, 10–405 (B–2–2 Community Business Districts).

the Hamilton Plan had expired under its own terms. The circuit court agreed. Interpreting the Plan's specification that "it shall be in effect for a period of not less than twenty (20) years following" the date of its approval, as a "temporal limitation," the lower court ruled that the Hamilton Plan had expired in 1999 and, with it, so had the prohibition against rent-to-own stores. Accordingly, it reversed the Zoning Board's decision disapproving the permit application and directed the Board to order the City "to issue Neighborhood Rentals, Inc. a permit to use and occupy the premises at 5525–5527 Harford Road for the sale, service, and rental, including rent-to-own, of electronics, appliances, and furniture."

That decision, seemingly at odds with the plain meaning of the Plan's duration provision, prompted the Zoning Board to file a "Motion to Alter or Amend Judgment," and a "Motion for Stay Pending Determination of Respondent's Motion to Alter or Amend." When both of those motions were denied, the Mayor and City Council of Baltimore ("the City") noted this appeal, presenting one question for our review:

> Did the lower court err when it ruled that the language of the 1979 Hamilton Business Area Urban Renewal Plan, stating that the plan was in effect for "not less than twenty years," constituted a temporal limitation under which the plan expired in 1999 and was no longer in effect?

In response, appellees moved to dismiss this appeal, claiming that the City has no standing to bring this appeal because it did not, they claim, "participate" in the proceedings below. In the alternative, appellees request that we affirm the judgment of the circuit court.

For the reasons that follow, we shall deny appellees' motion to dismiss, vacate the judgment of the circuit court, and direct that court to affirm the decision of the Zoning Board.

### THE HAMILTON BUSINESS AREA URBAN RENEWAL PLAN ("HAMILTON PLAN")

On November 30, 1979, the City enacted Ordinance 79–1207, designating, as an urban renewal area, a section of northeast

Baltimore known as the "Hamilton Business Area," and approving the implementation of the Hamilton Business Area Urban Renewal Plan ("Hamilton Plan" or "Plan"). The goal of the Plan was and—if the City is correct as to its present vitality—continues to be the "revitalization of the Hamilton Business Area in order to create a unique neighborhood retail business district with enhanced viability, attractiveness, and convenience for residents of the surrounding community and of the City as a whole." To achieve this revitalization, the Plan, among other things, designated "permitted uses" within residential and business sections of the Hamilton Business Area. Rent-to-own stores were permitted under the original Plan. However, on June 13, 1995, the plan was amended, with the enactment of Ordinance 95–564, to prohibit certain types of uses, including **"rent-to-own stores** ... not in existence on the date of the enactment of the ordinance." (Emphasis added).

Central to this appeal is one of the Plan's concluding paragraphs, entitled "Duration of Provisions and Requirements." Either it imposes a twenty-year "temporal limitation" on the Plan, as appellees contend and the circuit court held, or it does not, as the City claims and the Zoning Board found. It states:

The provisions and requirements of this plan, as it may be amended from time to time, **shall be in effect for a period of not less than twenty (20) years** following the date of the approval of this plan by the Mayor and City Council of Baltimore.

(Emphasis added).

## ZONING ADMINISTRATOR'S DECISION

On November 5, 2004, appellee Knox filed a permit application with DHCD to allow "Sales/Rental/Service of electronics, appliances and furniture," or what is known as a "rent-to-own" store, at 5525 Harford Road. The premises [3] lie within the

---

**3.** Earlier in 2004, appellees had submitted a permit application for the adjoining premises—5523 Harford Road—for the same proposed use.

Hamilton Business Area and a B–2–2 Community Business District. It contains a vacant store and, as noted earlier, is owned by appellee CMS Property, LLC, and leased by appellee Neighborhood Rentals, Inc.

The Zoning Administrator initially approved the application, because the premises was located in a B–2–2 Community Business District, which permits the use requested by appellees. He then forwarded it, however, to other agencies for their approval, because the property was also located within an urban renewal area. Under § 1–206(b) of the Baltimore City Zoning Code, when a requirement of the Code conflicts with a requirement of any other law or regulation, including an urban renewal plan, the more restrictive regulation controls—in this case, that would be the Plan.

Upon receipt of the application, Roseanne Walsh, an employee of the Baltimore Development Corporation ("BDC"), reviewed it to ensure that such a permit would comply with the applicable urban renewal plan. Noting that the Hamilton Plan prohibited rent-to-own stores at the appellees' site, she recommended that the application be denied. Thereafter, when the Zoning Administrator failed, within fifteen days of receiving the application, to either issue a permit or notify appellees in writing why it would not,[4] appellees noted an appeal to the Zoning Board.

### ZONING BOARD'S DECISION

After a hearing, the Zoning Board adopted a resolution disapproving the permit application. In that resolution, it made the following findings of fact:

1. The previous use of the property was for business and office machines, sales, rental, and service. The proposed

---

That application was also denied, for the same reason that the application at issue here was denied: "the Hamilton Business Area Urban Renewal Plan did not allow rent-to-own stores." No appeal to the Zoning Board was subsequently filed.

4. Balt. City Zoning Code § 2–405.

use for sales, rental and service of electronic appliances (household) and furniture is listed as a separate use in the list of permitted use in the B–2–2 Community Business District and therefore cannot be considered as a continuation of a non-conforming use under the Urban Renewal Plan.

2. The proposed use of the premises is a rent to own facility as listed in the Hamilton Business Area Urban Renewal Plan, as amended per Ordinance No. 564 and approved June 13, 1995;

3. The Hamilton Business Area Urban Renewal Plan is still in effect;

4. Section 1–206(b) of the Zoning Code applies in this case. Section 1–206(b) states that if any condition or requirement imposed by a provision of this article is either more or less restrictive than a comparable condition or requirement imposed by any other provisions of this article or of any other law or regulation or any kind, including the applicable Urban Renewal Plan, the condition or requirement that is more restrictive governs.

In a B–2–2 Community Business District furniture stores and electrical and household appliance stores are listed as permitted uses. Rent to own stores, however are prohibited under the Land Use Provisions and Standards in the Community Business Area Urban Renewal Plan.

In sum, the Zoning Board found that "the proposed use d[id] not comply with the permitted uses listed" in the Hamilton Plan, that the Hamilton Plan was "still in effect", and that appellees' application must therefore be disapproved, in accordance with the Plan.

## CIRCUIT COURT'S DECISION

After hearing argument on the question of whether the Hamilton Plan was still in effect, the circuit court issued its ruling from the bench. The court observed that, when the City Council amended the Plan in 1995, the Council did not think the Plan "was expiring in 1999." As evidence of that,

the court cited the "substantial additions" that were made to the Plan by that amendment. But the court declined to adopt that view of the 1995 Council, because it felt it had no "direct evidence" as to what the language in the duration provision meant.

Nor did it believe that the plain meaning of the words resolved the issue. After noting that "the normal meaning of **not less than**" is "at least" and ordinarily expresses a "minimal period of duration", the court asserted that the phrase was nonetheless "ambiguous." The "ordinary meaning" of these words, the court explained, could not be the "final answer on what they mean" because, if given their ordinary meaning, they would "have no functional effect." If they did not impose a "temporal limitation," then the Plan, the court reasoned, would have "perpetual existence," rendering the entire phrase "meaningless." Given that the Zoning Code creates "a number of restrictions" and "pre-conditions" for urban renewal plans and that "such plans are valid based upon the fact that they do have certain limitations on them," the court found that the duration provision in the Hamilton Plan was a "temporal limitation" of twenty years that ran from its 1975 enactment and thus, it was "no longer in effect."

The next day, the circuit court issued an order reversing the Zoning Board's decision and directing the Zoning Board to order the DHCD to issue appellees the permit they had requested.

## MOTION TO DISMISS

■ Appellees contend that this appeal should be dismissed because the City "failed to participate in the circuit court" and thus has no standing to bring this appeal.

But, contrary to the appellee's claim, the City did in fact participate in the proceedings below. There is no dispute, for example, that the City Solicitor, who represented both the City and the Zoning Board, filed a response to appellees' petition for judicial review in the name of the City. Nor is it disputed that all circuit court docket entries refer to the City

as an "interested party" and that the City never withdrew, nor was it ever dismissed, from the case.

That all subsequent documents were filed in the circuit court, under the name of the Zoning Board, the City attributes to a "titling mistake." We have no reason to believe it was attributable to anything else. Indeed, given the close relationship between the Board and the City, as the former is an institutional agent of the latter, and that they were represented by the same counsel, the error was understandable, and once committed would quite naturally escape early detection by both sides, as it did. In fact, as the City notes, the misdesignation first occurred in a joint stipulation filed by both parties that neither side, it appears, was aware of. And, thereafter, the "titling mistake" went unnoticed by both sides for some time. Indeed, it was not until after post-judgment motions were filed that this matter was first commented upon by appellees. Consequently, we conclude that the City did participate in the circuit court proceedings, at first under its own name, when the City Solicitor filed his initial pleading, and then, later, though misnomered.

■ In any event, the Baltimore City Zoning Code provides that a "party to the judicial review [of a Zoning Board decision] may appeal the court's final judgment to the Court of Special Appeals in accordance with the Maryland Rules." Balt. City Zoning Code § 17–305 (2004). As the City was in fact a party to the circuit court proceeding, it has a right, under that section of the Zoning Code, to bring this appeal. Moreover, as this Court has stated with respect to who may appeal from the judicial review of a local government decision: "Logically, all those parties properly in the case at the circuit court level ... may take an appeal to this Court if the circuit court's decision adversely affects them." *Jabine v. Priola*, 45 Md.App. 218, 225, 412 A.2d 1277 (1980). Since the City was "properly in the case at the circuit court level" and was adversely affected by the circuit court's decision, which, in effect, terminates one of its urban renewal plans, the City has a right to pursue an appeal in this Court.

## DISCUSSION

### I. Plain Meaning

" '[T]he cardinal rule ... is to ascertain and effectuate legislative intent.' " *County Council of Prince George's County v. Dutcher,* 365 Md. 399, 416, 780 A.2d 1137 (2001) (quoting *Chesapeake & Potomac Tel. Co. of Md. v. Dir. of Fin.,* 343 Md. 567, 578–79, 683 A.2d 512 (1996)). To ascertain that intent, we begin with the words of the statute—"the primary source of legislative intent"—giving them their ordinary meaning. *O'Connor v. Baltimore County,* 382 Md. 102, 113, 854 A.2d 1191 (2004). And, "when the words of the statute are clear and unambiguous, according to their commonly understood meaning," we need not go any further. *Dutcher,* 365 Md. at 416, 780 A.2d 1137 (internal quotation omitted).

There is no dispute, either between the parties or adjudicatory bodies that have reviewed this case, that the phrase "not less than" means "at least". It signifies, in the words of Black's Law Dictionary 1063 (6th ed. 1990), "the smallest or lowest degree." Not even the circuit court, which declined to read this phrase as such, contends otherwise. Indeed, that court stated that "the normal meaning of **not less than**" is "at least" and that it ordinarily expresses a "minimal period of duration." And that, moreover, is precisely how the Court of Appeals has interpreted that phrase whenever it has been called upon to do so.[5]

---

5. For instance, in *Gisriel v. Ocean City Bd. of Supervisors,* 345 Md. 477, 693 A.2d 757 (1997), an election ordinance requiring that a referendum petition contain the "signatures of not less than twenty percentum (20%) of the qualified voters," *id.* at 481 n. 2, 693 A.2d 757, was described as meaning that the petitioners needed to obtain the signatures of "at least" twenty percent of qualified voters. *Id.* at 501, 693 A.2d 757. In *Rizzi v. Governor,* 255 Md. 698, 259 A.2d 258 (1969), the Court of Appeals rejected the arguments of the complainants that Art. III, § 34 of the Constitution of Maryland, which requires that state bond debts must be discharged " 'within fifteen years,' " *id.* at 700 n. 2, 259 A.2d 258, mandates that "bonds be issued for a full 15 year term and not for any lesser term." *Id.* at 704, 259 A.2d 258. "Such an interpretation," the *Rizzi* Court declared, "would require that the

■ Still, appellees urge us to reject the plain meaning of the duration provision's "not less than" language. To interpret the duration provision, in accordance with the plain and ordinary meaning of its words, would prohibit the Council, they claim, from ending the Plan before its twenty-year minimum had expired. Since a legislature "cannot by statute 'preclude' the repeal of any statute by a subsequent legislature," *Montgomery County v. Bigelow*, 196 Md. 413, 423, 77 A.2d 164 (1950), that interpretation, appellees insist, cannot withstand scrutiny.

But appellees' concern is unwarranted. The duration provision contains no language that prohibits, either expressly or impliedly, a future city council from lengthening or shortening the life of the Plan or terminating it altogether. Assuming, as we must, that the "not less than" language was fashioned with full knowledge that no council may prevent a future council from repealing an ordinance it has previously passed, *id.*, it becomes readily apparent that the language in question was intended to be exhortative and aspirational and not definitive and irreversible.

Invoking the circuit court's opinion, appellees further claim that, under the plain meaning interpretation urged by the City, the Plan would have no maximum duration and would therefore "continue in effect indefinitely after 1999." Such an interpretation, they claim, would reduce the "not less than" language of the duration provision to "surplusage," which the Council could not have intended.

Instead, the language at issue should be read, they maintain, as a "temporal limitation" on the Hamilton Plan's duration. In other words, they urge us to read "not less than twenty [ ] years" to mean "not more than twenty years"—an impressive inversion of the English language, but an inversion nonetheless.

---

phrase 'within 15 years' be interpreted as meaning 'at least' or 'not less than.' " *Id.*

 While we agree with appellees that the plain meaning of the duration provision permits the Hamilton Plan to continue indefinitely (or at least until the City amends or repeals the Plan), we do not agree that the provision should therefore be construed to terminate the Plan after twenty years. Appellees would have us interpret the "not less than" language of the duration provision so that it flatly contradicts its plain meaning or, in the alternative, ignore it altogether. We can do neither, without violating at least one of two basic rules of statutory construction: that the language of a statute determines its meaning if the language is "plain and unambiguous" and that a statute should be interpreted so that no word or phrase is rendered superfluous. *Dutcher*, 365 Md. at 416–17, 780 A.2d 1137. In the final analysis, the solution appellees present, in effect, renders the phrase "not less than" surplusage, the very evil their interpretation of this provision was meant to avoid.

## II. Public Policy

 The duration provision does not contain a termination date, but that omission does not necessarily contravene public policy, as appellees contend. As noted, the "not less than" language in the duration provision is intended to be exhortative and aspirational, not mandatory and definitive. By suggesting that the City is committed to the Plan for a minimum of twenty years, it publicly affirms the City's long-range commitment to urban renewal in the area covered by the Hamilton Plan and that commitment will not come to a precipitous end. Indeed, as the City notes, it assures businesses and families, which are attracted to an area because it is subject to an urban renewal plan, that it is the City's intention to remain active in that area for as long it may take to achieve the plan's goals. And such assurances are necessary if renewal is to occur. As the City reminds us, urban renewal efforts are frequently prompted by the private sector's unwillingness to invest in an area. Hence, plans, which do not have arbitrary cut-off dates and do not require legisla-

tive action for their continuation, are more likely to attract the necessary investment than plans that do.

Moreover, the omission of a termination date is consistent with the stated purpose of such plans. For example, § 2–1(a)(4) of Article 13 states that urban renewal plans are intended not only to rehabilitate or eliminate slums and "blighted, deteriorated, and deteriorating areas," but also to prevent "the spread or development of blight in, and the deterioration of, areas which are free of blight." Balt. City Code, art. 13, § 2–1(a)(4). Because goals of urban renewal include the conservation of gains made and the prevention of blight in presently unblighted areas, it makes "perfect sense," the City suggests and we agree, for a plan to contain "an estimate by the City Council of the minimum time needed for a plan, but deliberately omit a specific expiration date," as the Hamilton Plan does.

Finally, as the City notes, "since urban renewal is often financed by the issuance of bonds [citation omitted], it makes sense that a local government would desire an urban renewal plan to be in existence for a minimum period of time so that the bond can be paid back." And because, as the City observes, "one legislature cannot preclude another from repealing a statute [citation omitted]," there is all the more reason that the Council "would include language [in the plan] to discourage such repeal for a period of time without intending that period of time to represent an endpoint."

### III. Legal Back–Drop

In holding that "not less than twenty years" really meant "not more than" that period, the circuit court declared: "[U]rban renewal plans are enacted against the backdrop . . . of a body of law[ ] that says such plans are valid based upon the fact that they do have certain limitations on them." To continue an urban renewal plan in accordance with this "backdrop," the court extrapolated, "you have to come back and redo it;" in other words, seek reauthorization. "The relevant legal backdrop of the 1979 Hamilton Plan," to which the court was referring, appellees assert, "includes the Maryland Con-

stitution, Maryland Code, Baltimore City Charter and Code, cases interpreting urban renewal plans, and the City's own interpretation of similar clauses in other urban renewal plans." But neither the Baltimore Code nor the Maryland Constitution nor the Baltimore Charter contains any language mandating that urban renewal plans contain an expiration date. And the cases and urban renewal plans to which appellees refer hardly provide support for concluding, as appellees claim, that the Hamilton Plan contains a fixed termination date.

The constitutional basis for urban renewal plans in Baltimore City is Article XI–B of the Maryland Constitution. It grants authority to the City to acquire and dispose of property for development and rehabilitation, without imposing any time limits on that authority. Md. Const. art. XI–B, § 1. *Cf. Master Royalties Corp. v. City of Balt.*, 235 Md. 74, 85, 200 A.2d 652 (1964). Pursuant to this authorization, the City enacted Article 13, Division I, subtitle II of the Baltimore City Code, creating the DHCD, which oversees the creation and implementation of urban renewal plans. Renewal plans, as defined by this subtitle, are plans "for the elimination, correction, or the prevention of the development or the spread of slums, blight, or deterioration in an entire Renewal Area or a portion thereof." Balt. City Code, art. 13, § 2–5(b)(1). There is no provision in the Baltimore City Code, Article 13 ("Housing and Urban Renewal") that mandates that urban renewal plans contain a termination date. And that omission, as we have discussed, is consistent with the stated purpose of such plans.

Appellees further maintain that we should consider the Hamilton Plan against the "backdrop" of cases from other jurisdictions. Those cases, they claim, demonstrate that, when blight has been eliminated from an area, the "special powers" given to local governments to eliminate blight cease to exist. It is not altogether clear where appellees want us to go from here. But, it appears, they wish us to infer from that premise that because a plan is only justified as long as blight exists, the Council must have intended that the Hamilton Plan have a fixed termination date. The logic of this argument, if

there is any, collapses with the realization that the opposite can also be inferred, with equal warrant, from the same premise: If the Council wanted the Plan to last as long as there was blight, it would make just as much sense, and perhaps more, to leave the duration of the Plan open-ended so that the Council could be sure that it would end contemporaneously with the elimination of blight. Conversely, it would be foolish to fix a date in the distant future for the Plan to expire when that may or may not have occurred and thereby potentially undermine the purpose of the Plan.

In any event the cases that appellees cite in support of their argument—*Arvada Urban Renewal Authority v. Columbine Professional Plaza Association, Inc.,* 85 P.3d 1066 (Colo.2004), *Aposporos v. Urban Redevelopment Commission,* 259 Conn. 563, 790 A.2d 1167 (2002), and *Taliaferro v. Darby Township Zoning Board,* 2005 WL 696880 (E.D.Pa. Mar. 23, 2005)— present, in appellant's words, "factual scenarios in applicable to the case at bar."

In *Arvada Urban Renewal Authority,* the City of Arvada had designated a 500–acre tract for redevelopment. After a portion of that tract had been redeveloped pursuant to the redevelopment plan, the city "formally released" it. But, when one of the buildings on that portion became vacant, the city initiated a condemnation action. Holding that the city could not condemn that land under the existing redevelopment plan, the Supreme Court of Colorado stated that once the purpose of the renewal plan had been achieved—the elimination or prevention of the spread of slum or blight—"an authority may no longer rely on a municipality's initial blight determination to condemn property because it can no longer exercise its condemnation powers in furtherance of a valid public purpose." *Id.* at 1073. But that did not occur here.

Appellees' property, unlike the subject property in *Arvada Urban Renewal Authority,* was not condemned, transferred, developed, and formally released by the city. In fact, appellees's property was and remains under the Hamilton Plan. Consequently, appellees do not advance their cause by citing

this case or, for that matter, the two that follow: *Aposporos v. Urban Redevelopment Commission*, 259 Conn. 563, 790 A.2d 1167 (2002), and *Taliaferro v. Darby Township Zoning Board*, 2005 WL 696880 (E.D.Pa. Mar. 23, 2005).

In *Aposporos*, the City of Stamford instituted a redevelopment plan that identified certain properties for redevelopment. 259 Conn. at 566, 790 A.2d 1167. The plaintiffs, in that case, owned property in the same area but that property was not identified for redevelopment when the plan was passed. *Id.* Eventually, the city sought to acquire plaintiffs' property by amending the plan. In holding that the amendment of that plan was invalid, the Supreme Court of Connecticut stated that the city could not "make an initial finding of blight and rely on that finding indefinitely to amend and extend a redevelopment plan to respond to conditions that did not exist, or to accomplish objectives that were not contemplated, at the time that the original plan was adopted." *Id.* at 576–77, 790 A.2d 1167. Once again, we note that appellees' property, in contrast to the property at issue in *Aposporos*, was always part of the Hamilton Plan.

Moreover, the Supreme Court of Connecticut in a later decision, *Maritime Ventures, LLC v. City of Norwalk*, 277 Conn. 800, 894 A.2d 946 (2006), limited the scope of *Aposporos*, declaring that "no renewed finding of blight is required for approval of a modification to a redevelopment plan unless the 'amended' plan resulting from such modification is in fact not merely an amended plan, but a new plan." *Id.* at 822, 894 A.2d 946. There is no such contention before us.

And finally, appellees cite *Taliaferro v. Darby Township Zoning Board*, 2005 WL 696880 (E.D.Pa. Mar. 23, 2005), an unreported decision of the United States District Court for the Eastern District of Pennsylvania, for the proposition that the "not less than" language can limit the duration of an urban renewal plan. In that case, the Darby Township approved an urban renewal plan imposing land use restrictions on an area, which included the plaintiffs' property. The restrictions were to remain in effect "for a period of not less than twenty (20)

years following the date" of the plan's approval. But the issue there had nothing to do with the import of that phrase. Instead, the question before the district court was whether the plaintiffs had been injured by the failure of the township and others to develop the property in accordance with the its urban renewal plan. *Id.* at *5.

In a lengthy written opinion, the district court at one point remarked that the plan "appears to have expired more than twenty years before Plaintiffs initiated this suit". Not only was the statement a non-binding incidental observation and thus obiter dictum, but the court based that observation, not on the "not less than" language of the plan, but on the terms of an indenture that was part of the plan. The indenture provided that the plan would be in effect "until April 6, 1980,"—twenty years after it was adopted. *Id.* at *5–6. Thus, *Taliaferro* has no more bearing on the issue before us than *Arvada Urban Renewal Authority* or *Aposporos* does. In sum, none of the cases cited by appellees provide any authority in support of appellees' claim that the "not less than (20) twenty years" language should be read as limiting the duration of the Hamilton Plan to that period or otherwise ignored.

Appellees also urge us to consider the Hamilton Plan in the context of other Baltimore City urban renewal plans with similar duration provisions. They specifically direct our attention to the Harlem Park Project II ("Harlem Park Plan") and the South Baltimore Business Area Urban Renewal Plan ("South Baltimore Plan"). The duration provisions in these two plans, appellees claim, were interpreted by the City as having definite expiration dates, notwithstanding the fact that they contained the same "not less than" language contained in the Hamilton Plan.

The Harlem Park Plan, enacted in 1960 by Ordinance 60–419, provided that the plan's provisions "shall be in effect for a period of not less than 40 years" following the date of enactment. But, in 1998, as appellees note, the City enacted Ordinance 98–337. In its introductory "Recitals" section was the assertion that it was "necessary to ... extend the period

of time in which the Plan will be in effect." Appellees argue that if the phrase "not less than 40 years" had not been a temporal limitation, there would have been no need in 1998 to extend the period of time in which the plan would be in effect.

The South Baltimore Plan was created by Ordinance 75–930 in 1975. The South Baltimore Plan's duration provision stated that the provisions "shall be in effect for a period of not less than twenty (20) years" following approval of the plan. In 1998 the City enacted Ordinance 98–327, "readopting, with amendments" the South Baltimore Plan. In its "Recitals" section, the enabling ordinance stated:

The first Urban Renewal Plan for the South Baltimore Business Area ... was established for a period of *not less than* 20 years. It is necessary to readopt this Urban Renewal Plan, with amendments, to continue the rehabilitation of the area under the auspices of the plan.

(Emphasis in original).

But these two examples, culled from numerous other urban renewal plans, provide scant evidence that the City routinely and consistently interpreted the "no less than" language as a "temporal limitation" on an urban renewal plan.

Indeed, the City cites the Charles/North Revitalization Area Urban Renewal Plan ("Charles/North Plan") as an example of where that did not occur. The duration provision of the Charles/North Plan incanted that the provisions of the plan "shall be in effect for a period of not less than twenty (20) years" following the date of approval. It was originally approved in 1982, and amended several times thereafter; the latest amendment occurred in 2004. Under appellees' interpretation of this language, this plan would have expired in 2002, twenty years after the date of its enactment. But the Council apparently believed otherwise. It amended that plan in 2004, two years after, under appellees' reasoning, the plan had lapsed.

But the most telling example of the Council's two minds on this subject is the Hamilton Plan itself. As we shall later discuss in greater detail, the Council in 1995 amended the

Plan just four years before appellees claimed it was to expire under its "not less than twenty years" duration clause, and, in doing so, gave property owners, as much as two years to comply with the Plan's new requirements. The Council's actions obviously reflected its belief that the Plan was not going to end in two years. Moreover, no effort was made at that time to extend the Plan for, we presume, the same reason.

The most that can be said about the conflicting examples cited by the parties is that they show the Council did not take a consistent or even predictable approach to this subject and therefore those examples provide little guidance as to how we should interpret the Hamilton Plan's duration provision. But what is true of the City's urban renewal plans in general is not true of the Hamilton Plan itself. Its statutory history confirms that the Council consistently treated that plan as if it had no temporal limitation.

Appellees also argue that the Zoning Board should have given weight to the testimony of Avery Aisenstark, Baltimore City's Director of Legislative Reference. Aisenstark testified before the Zoning Board that he would interpret the duration provision to mean that the Hamilton Plan "could not go beyond twenty years without either a specified date or some mechanism for determining how long" the Plan could last. Although the parties to this appeal disagree as to the significance of these comments, it is clear that the Zoning Board considered the testimony, and discounted it, which it was free to do.

## IV. Legislative History

 "Even when the language of a statute is free from ambiguity," as it is here, " 'in the interest of completeness' we may . . . explore the legislative history of the statute under review." *Dutcher,* 365 Md. at 420, 780 A.2d 1137 (internal citations omitted). We do so, however, to confirm the plain meaning of the statutes, not to contradict it. *Id.*

The legislative history of the Hamilton Plan suggests that it was not intended to automatically expire after twenty years. Indeed, in 1995, just four years before appellees claim the Plan was to end, the City enacted Ordinance 95–564, approving substantial amendments to the original 1979 Hamilton Plan. Among other things, the amendments prohibited certain uses, including "rent-to-own" stores and imposed size limitations on certain types of signs. Furthermore, the amendments gave businesses two years in which to comply with the sign limitations. Thus, if we were accept to appellees' claim, we would have to conclude that the legislature enacted these amendments knowing that they would then expire within two years of compliance. That conclusion was rejected by the circuit court, which observed: "[I]t is a fair inference to say that the fact that [the City Council] w[as] making pretty substantial additions in 1995 is some indication that they didn't think that it was going to expire in 1999." And it was understandably not pressed by appellees on appeal.

Because the plain meaning of the duration provision and its legislative history compel us to conclude that it has no fixed termination date, we need not reach the City's final argument that, even if appellees' claim were true—that the duration provision temporally limits the life of the Plan—the 1995 reapproval of the plan would have extended it until June of 2015.

**JUDGMENT REVERSED.**

**CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY WITH INSTRUCTIONS TO AFFIRM THE DECISION OF THE BOARD OF MUNICIPAL AND ZONING APPEALS.**

**COSTS TO BE PAID BY APPELLEES**